822 F.2d 59
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carmen BAKER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 86-1724
 United States Court of Appeals, Sixth Circuit.
 July 6, 1987.
 
 Before WELLFORD, MILBURN and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Carmen Baker appeals from the judgment of the district court affirming the Secretary's determination of the onset date of plaintiff's disability. For the reasons that follow, we affirm.
 
 I.
 
 2
 This case presents a somewhat complicated procedural history. Claimant filed her original application for supplemental security income on July 8, 1975, alleging disability due to emphysema, asthma, and a mastoid infection. Her claim was administratively denied, and a de novo hearing was held before an Administrative Law Judge ('ALJ'). The ALJ determined that claimant was disabled from a combination of impairments, and granted an entitlement to SSI benefits commencing on July 8, 1975.
 
 
 3
 Pursuant to section 1611(c)(1) of the Social Security Act, claimant's entitlement to SSI benefits was reviewed. Another administrative hearing was held on October 19, 1978, and the ALJ determined that claimant was not under a disability after June 1978. This decision was affirmed by the Appeals Council on January 8, 1979.
 
 
 4
 Claimant perfected an appeal to the district court. While this appeal was pending, claimant filed a second application for disability benefits on April 22, 1980. The second application was administratively denied.
 
 
 5
 A second hearing was held on December 2, 1980. The ALJ issued a recommended decision to the Appeals Council, concluding that claimant was disabled, and recommending that the Appeals Council reopen the prior decision which terminated SSI as of June 1978.
 
 
 6
 After the ALJ issued his recommended opinion on the second application for benefits, the district court affirmed the determination that SSI benefits were appropriately terminated as of June 1978. Consequently, the Appeals Council rejected the ALJ's conclusion that the termination decision should be reopened. The Appeals Council also denied Baker's April 1980 application, concluding that she was not disabled.
 
 
 7
 Baker again appealed the denial of her April 22, 1980, application to the district court. The district court remanded the case to the Secretary because the transcript of the hearing held before the ALJ regarding the April 1980 application could not be prepared.
 
 
 8
 On remand, the case was heard before ALJ Earl Meisenbach. In that hearing, which was held on September 19, 1984, the ALJ considered claimant's medical record, claimant's testimony, the testimony of claimant's sister, and the testimony of a vocational expert. The ALJ issued a recommended decision concluding that claimant had not been disabled between June 1978 (the date at which disability payments were terminated) and April 14, 1983 (the date at which claimant was diagnosed by her treating physician as suffering from chronic irritable bowel syndrome as evidenced by a colonoscopy). However, the ALJ concluded that claimant was disabled on April 14, 1983.
 
 
 9
 The ALJ's decision was adopted by the Appeals Council on January 28, 1985. Claimant again appealed to the district court, which concluded that the decision of the Secretary was based on substantial evidence. Accordingly, the decision of the Secretary was affirmed by the district court.
 
 
 10
 In this appeal, claimant argues that the April 14, 1983, onset date is inappropriate, and that the Secretary's decision in this regard is not supported by substantial evidence. To support her contentions, claimant alleges that she suffers from a wide range of physical and psychological abnormalities. These include hip pain, knee and wrist impairments, back pain, chronic cough, irritable bowel syndrome, diarrhea, depression, anxiety neurosis, hallucinations, suicidal tendencies, nervousness, deafness, jaw pain, and blurry vision. However, as Dr. Dircks noted in his examination of May 7, 1984, 'I don't believe I asked her about an organ system on her body that was not in some malfunctioning pain or not adversely symptomatic.' Joint Appendix at 312.
 
 
 11
 The relevant medical evidence for purposes of our determination of whether the Secretary's decision regarding the appropriate onset date is supported by substantial evidence is the medical evidence produced during the time for which benefits were denied. On March 9, 1978, claimant's chest X-ray was normal. Joint Appendix at 268. On April 3, 1978, claimant was examined by Dr. Andrejs Dimants at the request of the Michigan Disability Determination Service. At that time, claimant alleged impairments of pain in the left side, headaches, back and chest pain, and possible hiatal hernia. Dr. Dimants noted that '[i]n reviewing the systems, although the patient gives positive responses to any questions asked about any organ system, she is unable to significantly describe any objective complaints.' Joint Appendix at 265. In his final impression, he concluded 'I find no objective evidence of physical disability within the scope of this examination and although multiple medical problems are alleged, apparently previous medical evaluations have not been fruitful of any significant organic disease.' Joint Appendix at 267.
 
 
 12
 On June 23, 1978, claimant reported to the Kalamazoo Radiology Clinic, complaining of chest pain, cough, and pain in the knees. Chest and knee X-rays were normal. Joint Appendix at 140.
 
 
 13
 On June 29, 1978, claimant was examined at the Michigan Medical and Dental Needs Clinic. She was diagnosed as suffering from headaches and anxiety neurosis. Joint Appendix at 245.
 
 
 14
 On September 8, 1978, Dr. Joseph Bowler indicated that claimant suffered from episodes of severe dizziness associated with nausea and vomiting. He stated that she suffered hearing loss in both ears, and concluded that she was disabled to a moderate degree because of a hearing disorder. However, he indicated that there were types of work that she could perform. Joint Appendix at 256-57.
 
 
 15
 On October 27, 1978, claimant was examined at Three Rivers Hospital, complaining of epigastric pain. Upper GI X-rays were normal. Joint Appendix at 183.
 
 
 16
 On June 14, 1979, claimant was examined by Dr. Patil who indicated that claimant suffered from possible irritable colon syndrome and possible food allergy. Dr. Patil further indicated that he was 'skeptical that we will find anything definitely abnormal in this case.' Joint Appendix at 164.
 
 
 17
 On July 7, 1979, claimant was examined at the Borgess Gastroenterology Service. The diagnostic impression was irritable colon syndrome. Joint Appendix at 175.
 
 
 18
 On July 24, 1979, Dr. A. L. Benedict reported the results of several laboratory tests. He indicated that claimant's pulmonary function test showed an element of restrictive lung disease. Her upper GI series was negative, as were barium enema, X-ray of the large bowel, X-rays of the cervical spine, thoracic spine and lumbar spine. Claimant also had a normal gallbladder X-ray. Joint Appendix at 141.
 
 
 19
 On October 1, 1979, Dr. Patil indicated that he had scheduled claimant for an examination at the Mayo Clinic. Joint Appendix at 162. While at the Mayo Clinic, claimant underwent surgery for an ear problem that had caused her to experience dizzy spells. Joint Appendix at 161. Claimant's postoperative course was described as 'smooth.'
 
 
 20
 On December 6, 1979, claimant was examined by Dr. Richard Foa. He indicated that she suffered from tension headaches, depression, anxiety, and jaw pain. Joint Appendix at 149.
 
 
 21
 On February 4, 1980, claimant returned to the Mayo Clinic for the follow-up evaluation of her surgery. Dr. Reitmeier indicated that, at that time, the general physical examination was entirely normal except for mild tenderness throughout the abdomen. The proctoscopic examination was normal. Chest X-ray and EKG were normal. X-ray of the stomach, small intestine, colon, and terminal ileum were also normal. Dr. Reitmeier indicated that claimant's abdominal complaints and diarrhea were symptoms of an irritable bowel syndrome, and he urged her to stop smoking and drinking coffee. Claimant indicated that she was uncertain whether she would be willing to do so. Dr. Reitmeier advised her to take Metamucil on a daily basis, and he was uncertain whether she followed that advice.
 
 
 22
 Dr. Reitmeier further indicated that claimant's headaches were tension related. He also recommended conservative treatment of her jaw disorder. Joint Appendix at 154.
 
 
 23
 On March 21, 1980, an X-ray report indicated that claimant's upper gastrointestinal system was normal. Joint Appendix at 182. An X-ray dated March 31, 1980, indicated that claimant's colon and terminal ileum were normal. Joint Appendix at 181. On May 2, 1980, Dr. Lee indicated that claimant suffered from an irritable colon, neuralgia, and neurotic depression. Joint Appendix at 180.
 
 
 24
 On July 9, 1980, Dr. Baum of the Chelsea Community Hospital indicated that claimant's heart, lungs and thorax were normal. Joint Appendix at 190. On July 10, 1980, Dr. Peggs indicated that claimant suffered from irritable bowel syndrome and chronic bronchitis. Joint Appendix at 186. On June 20, 1981, Dr. Hamati indicated that claimant suffered from pain in various regions of her body and occasional diarrhea. Joint Appendix at 348.
 
 
 25
 Claimant began seeing Dr. Ned Krohn on April 14, 1983, at which time he indicated she suffered from chronic irritable bowel syndrome. His diagnosis was supported by a colonoscopy. Joint Appendix at 321. On the basis of this evaluation, supported by objective medical evidence, the ALJ concluded that claimant became disabled as of April 14, 1983.
 
 II.
 
 26
 As an initial matter, we must resolve a conflict regarding the precise nature of this appeal. Claimant attempts to characterize this appeal as a review of the benefit termination proceeding. As noted above, claimant's benefits were terminated in June 1978. The termination decision was affirmed by the Appeals Council and the district court, and no further appeal was taken.
 
 
 27
 The law in this circuit is clear that if a claimant does not appeal an adverse disability determination, nondisability as of the date of decision is established as a matter of res judicata. See, eg., Wills v. Secretary, Health & Human Services, 802 F.2d 870, 871 n.2 (6th Cir. 1986); Gibson v. Secretary of Health, Education & Wefare, 678 F.2d 653, 654 (6th Cir. 1982); Maddox v. Richardson, 464 F.2d 617, 619 (6th Cir. 1972); Gaston v. Richardson, 451 F.2d 461 (6th Cir. 1971). Consequently, our review is limited to the proceedings involving plaintiff's second application for benefits which was filed on April 22, 1980. As we earlier indicated, the specific issue we must consider is whether the Secretary's determination of the appropriate onset date is supported by substantial evidence.
 
 
 28
 The Secretary's determination of onset date must be affirmed if supported by substantial evidence. Pursuant to 42 U.S.C. Sec. 405(g), '[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..' Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). 'Substantiality of the evidence must be based upon the record taken as a whole . . . [and] 'must take into account whatever in the record fairly detracts from its weight." Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984) (quoting Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383, 387 (6th Cir. 1978)). In the present case, "the question we face is whether the chosen onset date is supported by substantial evidence, not whether an earlier date could have been supported." Villa v. Heckler, 797 F.2d 794 (9th Cir. 1986) (quoting Swanson v. Secretary of Health & Human Services, 763 F.2d 1061, 1065 (9th Cir. 1985)).
 
 
 29
 In the present case, there is substantial evidence to support the Secretary's determination. Our review of the medical evidence indicates that the objective medical evidence available before April 14, 1983, did not support a claim of disability. It is axiomatic that a claim for disability benefits must be supported by medical evidence. 42 U.S.C. Sec. 423(d)(3); 20 C.F.R. Sec. 404.1508. Under these circumstances, the Secretary's decision to award disability benefits beginning on the date coinciding with the date of the objectively supported diagnosis of chronic irritable bowel syndrome was not error.
 
 III.
 
 30
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.